## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

Iceotope Group Limited,

                Plaintiff,

v.

LiquidCool Solutions, Inc.,

                Defendant.

_____

Civil No. 20-cv-02644 (WMW/KMM)


**DEFENDANT'S MEMORANDUM
IN SUPPORT OF ITS RULE 12
MOTION TO DISMISS**


## I.      INTRODUCTION

Plaintiff Iceotope Group Limited ("Iceotope") asks this Court to "correct" the inventors named (the "Inventors") on two patents assigned to Defendant LiquidCool Solutions, Inc. ("LiquidCool")—U.S. Patent Nos. 10,390,458 (the "'458 Patent") and 10,609,839 (the "'839 Patent") (collectively the "LiquidCool Patents"). Iceotope, a U.K. company, seeks to add some mix of five Iceotope employees (the "Iceotope Employees") as named joint inventors on the LiquidCool Patents.  Reaching even further, Iceotope asks this Court to entirely remove the names of the six Inventors and replace them with the five Iceotope Employees.  Iceotope's complaint fails to allege any set of facts that would plausibly justify such far-reaching relief.

Under the U.S. patent system, the first inventor to *file* a patent application for a claimed invention is entitled to receive a patent, even if another person earlier conceived of the same invention.  Where inventions result from collaboration, each person who contributes to the conception of the claimed invention is a joint inventor who should be

named on any issued patent.  Sometimes a collaborating person who should have been named as an inventor is inadvertently, or less commonly, deliberately, not named by the patent applicant.  The patent laws allow such collaborating but omitted inventors to sue to correct the named inventors on an issued patent.

In seeking to correct inventorship under 35 U.S.C. § 256, Iceotope alleges no facts to support a finding of collaboration or joint activity, a requirement to add an omitted inventor.  In fact, Iceotope alleges no facts demonstrating *any connection* to LiquidCool or the Inventors at all. In seeking to add its employees as named inventors, Iceotope relies upon conclusory allegations that they conceived of the inventions claimed in the LiquidCool Patents (the "LiquidCool Inventions"). In place of facts, Iceotope merely quotes selected claims from the LiquidCool Patents and asserts that the *elements* of those claims are disclosed in unspecified parts of six alleged Iceotope publications, most of which were first published *after* LiquidCool filed its patent applications. In seeking to completely remove the Inventors, Iceotope fails to allege a single fact suggesting that even one of the Inventors is not an actual inventor, a requirement to overcome the legal presumption that each of the Inventors are true and correct inventors. Iceotope's unsupported legal conclusions fall far short of the plausibility standard required to state a claim for relief.

For these and the other reasons set forth herein, LiquidCool respectfully asks this Court to dismiss Iceotope's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.  STATEMENT OF FACTS[1]

### A.  Iceotope does not allege that it collaborated with LiquidCool or the Inventors and is silent about LiquidCool's provisional patent application.

LiquidCool is a Minnesota corporation with a principal place of business in Rochester, Minnesota.  Dkt. 1, ¶ 4.  The LiquidCool Inventions are directed to liquid submersion cooling of electronic array systems and devices, such as computer servers. Ex. 1, '458 Pat. 1:6-7; Ex. 2, '839 Pat. 1:6-7.[2]  The LiquidCool Patents name a total of six individuals as inventors.  Dkt. 1, ¶¶ 30 & 31.   The '458 Patent claims an effective filing date of September 20, 2017; the '839 Patent has a filing date of September 28, 2018. Exs. 1 & 2, cover pages.

On September 20, 2017, LiquidCool filed a provisional patent application with the Patent Office disclosing its liquid cooling technology claimed in the '458 Patent.  Ex. 1, '458 Pat. at cover page (disclosing related provisional application filed on September 20, 2017).  The complaint is silent about this provisional application and silent about the *effective* filing date of the '458 Patent even though the provisional application and its effective filing date are shown on the face of the patent.  A provisional patent application

---

[1] On a motion to dismiss, this Court must take the well-pled fact allegations of the complaint as true. This Statement of Facts consists of alleged facts taken from Iceotope's complaint and documents embraced by the complaint, and reasonable inferences in Iceotope's favor therefrom, which are accepted for these purposes only.

[2] In deciding a motion to dismiss, in addition to the complaint itself, this Court may consider "materials embraced by the complaint."  *Smith v. Questar Capital Corp.*, No. 12-CV-2669 SRN/TNL, 2013 WL 3990319, at *3 (D. Minn. Aug. 2, 2013).  LiquidCool files herewith a Declaration of David L. De Bruin which attaches as Exhibits 1 to 4 the LiquidCool Patents, the UK '053 patent, and the UK '622 patent (cited herein as "Ex. __"), each a public document which is embraced by the complaint.

is a mechanism for an applicant to confidentially disclose its invention to the Patent Office, without triggering the expensive process of examination by the Patent Office. The applicant then has one year to file a non-provisional patent application with patent claims based on that initial disclosure to the Patent Office.  For purposes of priority of invention, the non-provisional application is treated as if filed on the date the provisional application was filed.  LiquidCool filed the non-provisional application that ultimately issued as the '458 Patent on September 20, 2018.  As reflected on the face of the '458 Patent, it claims priority to the September 20, 2017 provisional application.

Iceotope's complaint does not allege that any Iceotope employees, agents or independent contractors ever worked with any of the Inventors named on the '458 Patent or '839 Patent at any time.  Likewise, there is no allegation that anyone connected with Iceotope ever communicated with any of the Inventors or with LiquidCool.  There is no factual allegation that anyone at Iceotope disclosed anything to the Inventors before the Inventors filed the provisional application that the '458 Patent claims priority to on September 20, 2017.

### B.    Icetope does not allege facts indicating the Iceotope Employees invented any of the LiquidCool Inventions.

Instead of identifying joint behavior or collaboration with LiquidCool, Iceotope seeks to base its claim on alleged disclosures in patent applications and other printed publications.  Iceotope alleges four of its patent applications and patents contain unspecified disclosures that are somehow relevant to its claim of inventorship:

- UK Patent No. 2,571,053 (the "UK '053 patent") and application resulting in the same;

- UK Patent No. 2,570,622 (the "UK '622 patent") and application resulting in the same;

- PCT Application WO-2018/096362 (the "'362 application"); and

- PCT Application WO-2019/048864 (the "'864 application").

*Id.* ¶¶ 17-19.

Iceotope further alleges that the "inventions described and claimed by Iceotope's UK applications and patents and by its PCT applications" were described in at least two whitepapers released by Iceotope and its business partners: an Iceotope publication entitled *Freeing HPC from the Datacentre ku:l system* (the "First Whitepaper"); and a Schneider Electric publication entitled *Liquid Cooling Technologies for Data Centers and Edge Applications* (the "Second Whitepaper") (collectively, the "Whitepapers"). Dkt. 1, ¶ 21. Iceotope fails to identify the publication dates of these Whitepapers. The authors of the First Whitepaper are not identified; the authors of the Second Whitepaper are three individuals other than the Iceotope Employees. Dkt. 1-1 at 147-155 & 157.

Iceotope fails to allege that *any* of its patents, applications or Whitepapers individually discloses or claims the LiquidCool Inventions. Instead, Iceotope merely copies the language from certain claims of the LiquidCool Patents and alleges in conclusory fashion that Iceotope's "patents, applications, and Whitepapers" (the "Iceotope Documents") *collectively* disclose and claim those *elements*. *Id.* at ¶¶ 22-29.

Despite relying upon the combination of these six documents, Iceotope fails to identify where within them the elements of any patented claim can be found. The complaint merely alleges in conclusory fashion that the Iceotope Employees "invented, conceived and reduced to practice" the inventions claimed by the LiquidCool Patents, but contains no factual allegations regarding ***how, where, or when***. *Id.* at ¶¶ 37 & 44. Allegations of those facts are necessary to state a plausible claim to correct inventorship.

For its part, LiquidCool disclosed the Whitepapers to the Patent Office. LiquidCool disclosed the First Whitepaper to the Patent Office during prosecution of the '458 Patent. Ex. 1, '458 Pat. at cover page. LiquidCool disclosed both the First and Second Whitepapers to the Patent Office during prosecution of the '839 Patent. Ex. 2, '839 Pat. at 2. The Patent Examiner considered these Whitepapers, did not find they provided a basis for rejecting LiquidCool's patent applications, and granted the LiquidCool Patents. Ex. 1, '458 Pat. at cover page; Ex. 2, '839 Pat. at cover page & 2.

**C.      Iceotope's speculative allegations of LiquidCool's "awareness" are without factual basis in the complaint, are contradicted by the documents, and are not tied to inventorship.**

Iceotope's complaint goes on to make assertions concerning LiquidCool's knowledge or awareness of the Iceotope Documents under a heading "LCS Knew of Iceotope's Technology and Claimed It as its Own."[3] Dkt. 1, at 11. The heading sounds

---

[3] It should be noted that nowhere does the complaint define "Iceotope's Technology," but for these purposes we take it to refer to the technology disclosed in the Iceotope Documents.

like one belonging in a complaint claiming theft of trade secrets or derivation of the inventions, not correction of inventorship. But, Iceotope's complaint does not bring a trade secrets case, nor one for derivation.  Despite the heading, the complaint contains no factual allegations about collaboration or contacts between Iceotope and LiquidCool or between their respective employees and the Inventors, and, importantly, no factual allegations that LiquidCool or the Inventors had any access to **non-public** Iceotope information before LiquidCool filed its patent applications.

Iceotope merely points to its published information and alleges LiquidCool's awareness based upon nothing more than a non-sequitur and "[u]pon information and belief." Dkt. 1, ¶¶ 33 & 34.  Iceotope does this while its complaint assiduously avoids any allegations of **when** the Iceotope Documents were published. Fortunately, the documents embraced by the complaint largely speak for themselves and provide a helpful timeline.  *See* fn. 2, *supra.*  They show none of the materials cited by Iceotope were published before LiquidCool began filing patent applications.

*All* of the Iceotope Documents were first published *after* LiquidCool filed its provisional application. The first of the Iceotope Documents to publish, the '362 application, was not published until May 31, 2018, more than eight months after LiquidCool filed its provisional application.  Dkt. 1-1 at 2.  Though there is no publication date stamp on the First Whitepaper, and Iceotope alleges no publication date, LiquidCool came into possession of a copy of the First Whitepaper on about August 5, 2018.  Ex. 1, '458 Pat. at cover page.  On September 20, 2018, LiquidCool filed the

application that resulted in the LiquidCool '458 Patent, claiming priority to the provisional application that it filed one year earlier.  *Id*.  Eight days later, LiquidCool filed the application that resulted in the LiquidCool '839 Patent.  Ex. 2, '839 Pat. at cover page.

   ***Each*** of the remaining four Iceotope Documents was published ***after*** LiquidCool filed both applications that resulted in the LiquidCool Patents.  Dkt. 1-1 at 167 (Second Whitepaper disclosing 2019 copyright); *id*. at 40 ('864 application disclosing Mar. 14, 2019 publication date); Ex. 3 at cover page (UK '622 patent disclosing August 7, 2019 application publication date); Ex. 4 at cover page (UK '053 patent disclosing August 21, 2019 application publication date).  None of these documents could be relevant to what LiquidCool knew at the time its Inventors disclosed the LiquidCool Inventions to the Patent Office.

   This timeline is summarized in the graphic below:



Iceotope's complaint provides not a single fact that supports its assertion that LiquidCool or its Inventors knew of any of the Iceotope Documents before they were published, only conclusory assertions detached in time. It also fails to allege how its assertions of LiquidCool's knowledge or awareness purportedly would relate to a claim of inventorship under § 256.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); Fed. R.

Civ. P. 8(a)(2).  If a pleading fails to state a claim upon which relief can be granted,

dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6).  *See, e.g.,*

*Twombly*, 550 U.S. at 555, 570.  Importantly, "[t]o survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief

that is plausible on its face."  *Iqbal*, 556, U.S. at 678.  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.*  While this standard

is not a probability requirement, "[w]here a complaint pleads facts that are merely

consistent with a defendant's liability, it stops short of the line between possibility and

plausibility of entitlement to relief." *Id.*  In other words, factual allegations suggesting

liability is merely possible are insufficient to state a claim.  In such cases, the claims

should be dismissed to "avoid the potentially enormous expense of discovery." *Twombly*,

550 U.S. at 559.

## IV.    ARGUMENT

Iceotope alleges two counts for correction of inventorship under 35 U.S.C.

§ 256—one for the '458 Patent and the other for the '839 Patent.  The alleged bases in the

complaint for these two counts are identical.  Therefore, the arguments below apply

equally to both counts.  Neither count is plausible on its face and, therefore, both counts

should be dismissed.

Section 256 is a savings provision.  Under § 256(b), an error in naming inventors

does not render an issued patent invalid if it can be corrected. Section 256 allows

correction of two types of errors, the error of omitting an inventor (i.e., nonjoinder) and the error of naming as an inventor persons who are not inventors (i.e., misjoinder). Iceotope asserts both nonjoinder of the five Iceotope Employees and misjoinder of the six Inventors, and seeks relief under § 256.

### A. Iceotope Fails to Plead Facts Showing Collaboration as Required to State a Claim to Add Omitted Inventors.

The patent laws permit the naming of joint inventors on a patent in just one circumstance—"[w]hen an invention is made by two or more persons *jointly*." 35 U.S.C. § 116 (emphasis added). The Federal Circuit has held, "the statutory word 'jointly' is not mere surplusage." *Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992). "A joint invention is the product of collaboration of the inventive endeavors of two or more persons working toward the same end and producing an invention by their aggregate efforts." *Maxwell v. K Mart Corp.*, 880 F. Supp. 1323, 1334 (D. Minn. 1995) citing *Kimberly-Clark Corp*., 973 F.2d at 916. "For persons to be joint inventors under Section 116, there must be some element of joint behavior, such as *collaboration* or *working under common direction*." *Rubin v. Gen. Hosp. Corp.*, No. CIV.A. 09-10040-DJC, 2011 WL 1625024, at *7 (D. Mass. Apr. 28, 2011), *aff'd*, 523 F. App'x 719 (Fed. Cir. 2013) citing *Kimberly-Clark Corp.*, 973 F.2d at 917 (emphasis original); *see also Michael v. Bell*, No. 11-CV-4484, 2012 WL 3307222, at *7 (N.D. Ill. Aug. 13, 2012) (citing *Kimberly-Clark Corp.*, 973 F.2d at 917). "A primary focus of section 116 has thus always been on collaboration and joint behavior." *Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1303 (Fed. Cir. 2010).

Iceotope's requested relief includes adding the Iceotope Employees as inventors on the LiquidCool Patents.  Dkt. 1 ¶¶ 42 & 49.  Yet Iceotope fails to plead any facts alleging that its employees collaborated with LiquidCool or the Inventors.  Absent any such facts, Iceotope's claims for adding erroneously omitted inventors (nonjoinder) in both Counts I and II of its complaint are not plausible and must be dismissed.  *Michael*, 2012 WL 3307222 at 8 (holding that "Plaintiff cannot be a co-inventor of the [patent at-issue] because her complaint does not allege that she collaborated with Defendants," therefore, her claim for correction of inventorship "must be dismissed for failure to state a claim on which relief can be granted.").

Unable to allege collaboration, Iceotope asserts that LiquidCool had knowledge of or access to the Iceotope Documents. As a matter of law, merely pleading that a document was accessible to, reviewed by, or even relied on by an inventor is insufficient to allege a claim for joint inventorship.  Absent collaboration, the ***independent*** review of documents is not the type of "joint behavior" that is required to establish joint inventorship.  *Rubin*, 2011 WL 1625024, at *7 citing *Kimberly-Clark Corp.*, 973 F.2d at 917 (holding that "building upon a relevant report on its own [does not rise] to the level of collaboration, because as the Federal Circuit stated, 'joint behavior' is required.").

Further, as shown in Section II.C., *supra*, absent collaboration, the Iceotope Documents are entirely irrelevant to Iceotope's claims.  Four of the six Iceotope Documents published after LiquidCool filed the applications resulting in the LiquidCool Patents.  Absent collaboration, LiquidCool could not have had any knowledge of these

documents prior to filing its applications.  To the extent that the remaining two Iceotope

Documents predate LiquidCool's applications, those Iceotope Documents are prior art,

not evidence of joint invention. *See* 35 U.S.C. § 102(a). Binding Federal Circuit

precedent makes clear that "a contribution of information in the prior art cannot give rise

to joint inventorship."  *Nartron Corp. v. Schukra U.S.A. Inc.*, 558 F.3d 1352, 1357 (Fed.

Cir. 2009).  Therefore, these Iceotope Documents cannot save Iceotope's claim of

nonjoinder of omitted inventors.[4]

Because Iceotope fails to plead any facts even suggesting that the parties

collaborated on the LiquidCool Patents, Iceotope's claims for nonjoinder are not

plausible on their face and must be dismissed.

> **B.    Iceotope's Complaint Lacks Sufficient Facts to Render Plausible on its Face Its Allegations that the Iceotope Employees Invented the Inventions Claimed by the LiquidCool Patents.**

Iceotope claims its five identified employees "actually invented, conceived and

reduced to practice" the inventions claimed by the LiquidCool Patents.  Dkt. 1, ¶¶ 37 &

44.  The sole factual basis offered to support these claims are found in paragraphs 22 to

29 of its complaint. In those paragraphs, Iceotope simply copied the claim language of

---

[4] Iceotope alleges that, *in combination*, the Iceotope documents disclose and claim the elements of claims found in the LiquidCool Patents.  Dkt. 1 at ¶¶ 22-29.  If it means to *imply* that any one of Iceotope's UK '053 patent, UK '622 patent, '362 application or '864 application, *claims* the same inventions as those claimed in the LiquidCool Patents, its joint inventorship claim indicates that the LiquidCool Inventors should have been listed as inventors on that Iceotope patent or application. None were so listed, which further confirms that Iceotope did not collaborate with LiquidCool on these patents.  *Rubin*, 2011 WL 1625024, at *7 (holding that plaintiff's failure to name defendant's employees as joint inventors on plaintiff's own patents allegedly claiming the same inventions for which plaintiff seeks to be added as a joint inventor on defendant's patents "evidences the fact that plaintiffs must not have considered themselves to be collaborating with the [defendant's employees].").

several of the LiquidCool Patents claims and then states, in conclusory fashion, that the

Iceotope Documents disclose these same elements. *Id.* As a matter of law, this

conclusory pleading does not state a claim that is plausible on its face. *See, e.g., Eastman*

*v. Apple, Inc.*, No. 18-CV-05929-JST, 2019 WL 1559015, at *3–4 (N.D. Cal. Apr. 10,

2019) (granting motion to dismiss where the plaintiff simply "copies the claim language

of numerous claims into his complaint but identifies no relationship between his [own

disclosures] and the claims themselves"); *see also DeSouza v. Bank of Am.*, No. CIV. 11-

1270 JRT/AJB, 2011 WL 4808532, at *1 (D. Minn. Sept. 13, 2011), *report and*

*recommendation adopted*, No. CIV. 11-1270 JRT/AJB, 2011 WL 4808204 (D. Minn.

Oct. 11, 2011) ("a plaintiff cannot rely upon general and conclusory allegations to

survive a Rule 12(b)(6) motion").

Iceotope cannot rely on the ***combined*** disclosure of the six Iceotope Documents,

without more specificity, to demonstrate that it invented what is claimed in the

LiquidCool Patents. The scope of an invention, and thus the claim for inventorship, is

defined by the claims of a patent. *Autogiro Co. of America v. U.S.*, 181 Ct. Cl. 55, 384

F.2d 391, 395–96 (1967). More often than not, inventions consist of known elements

combined in new ways. *KSR Intern. Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1741 (U.S.

2007) ("Inventions in most, if not all, instances will rely upon building blocks long since

uncovered, and claimed discoveries almost of necessity will be combinations of what, in

some sense, is already known."). Taken together, the relevant inventorship inquiry is not

whether a person or group of people separately conceived of the individual components

of an invention, but whether they conceived of the **_particular combination_** of those components as claimed in a patent. *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338-39 (Fed. Cir. 2015).

Iceotope provides no facts to support a claim that it conceived of the **_specific combination_** of elements as claimed in the LiquidCool Patents. Its allegations amount to an ambiguous and conclusory statement that "Iceotope's inventions include, and its patents, applications, and Whitepapers disclose and claim, a . . . device, comprising [the same elements as several claims of the LiquidCool Patents]." Dkt. 1 at ¶¶ 22-29. Even if mixing and matching the disclosures of these six Iceotope Documents discloses every element claimed in the LiquidCool Patents (something that Iceotope does not attempt to demonstrate), that does not suggest that Iceotope conceived of combining these elements in the specific manner claimed in the LiquidCool Patents.[5] Therefore, Iceotope's allegation that it invented what is claimed in the LiquidCool Patents is not plausible.

Unable to demonstrate a relationship between its own alleged inventions and the claims of the LiquidCool Patents, Iceotope instead attempts to shift the burden to LiquidCool to prove that LiquidCool developed the inventions claimed in the LiquidCool Patents. Dkt. 1 at ¶ 35. LiquidCool has no such burden. "Because the issuance of a patent 'creates a presumption that the named inventors are the true and only inventors,'

---

[5] LiquidCool disputes that the Iceotope Documents disclose all of the claim limitations of the LiquidCool Patents, and in a pre-suit exchange between the parties, Iceotope conceded that they do **_not_**. In its complaint, without explanation, Iceotope now alleges otherwise. This about face further evidences why the pleading standards require enough facts to make a claim plausible on its face, and why Iceotope's complaint falls far short of that standard.

named inventors do not bear the burden of producing such evidence." *Eastman*, 2019 WL 1559015, at 3-4 *citing Ethicon Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) (granting motion to dismiss and rejecting plaintiff's argument that "[defendant] is required to produce corroborating evidence of the named inventors' contributions"). It is Iceotope that bears the burden of proving, by ***clear and convincing evidence***, that the named inventors are listed incorrectly on the LiquidCool Patents. *Ethicon*, 135 F.3d at 1460-61. Iceotope did not plead any facts that would make such a claim plausible.[6]

Because Iceotope fails to plead a plausible claim of inventorship, both Counts I and II of the complaint should be dismissed in their entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

### C. Iceotope Alleges No Factual Basis to Justify Removing the Names of the Inventors, Nor to Seek Complete Substitution of Named Inventors.

Market forces and industry trends often result in several entities working to solve the same problems. This frequently leads to multiple entities independently developing similar technology (for example, one would be hard-pressed to find an automotive company not working on electric vehicle technology). Since the America Invents Act ("AIA") took effect in 2013, where more than one entity develops the same invention, the first inventor to ***file*** a U.S. patent application for that invention is entitled to receive a

---

[6] Iceotope misleadingly suggests in Dkt. 1, ¶ 35, that LiquidCool did not conduct an independent investigation in response to its inquiries. Many of the points made in this brief were communicated to Iceotope's counsel in two rounds of correspondence, the last of which responded to a draft complaint much of which was the same as the complaint filed.

U.S. patent—later filers (even if they conceived of the invention earlier) are not. 35
U.S.C. § 102.

Section 256 allows correction of two types of errors in naming inventors:
nonjoinder and misjoinder.  To completely substitute inventors, Iceotope must allege
facts to render plausible a claim for nonjoinder of the Iceotope Employees ***and*** a claim
for ***complete*** misjoinder of the Inventors.  In other words, Iceotope must not only allege
facts to render plausible that the Iceotope Employees had some collaborative relationship
with LiquidCool and that they actually invented the LiquidCool Inventions, but
additionally that ***each*** of the Inventors named should be removed because ***none*** jointly
invented what is claimed.

Under 35 U.S.C. § 101, the Inventors are properly named on the LiquidCool
Patents unless they did not "invent or discover" the LiquidCool Inventions.  Section 101
provides:

> Whoever invents or discovers any new and useful process, machine,
> manufacture, or composition of matter, or any new and useful
> improvement thereof, may obtain a patent therefor, subject to the
> conditions and requirements of this title.

To prove complete misjoinder, Iceotope must allege sufficient facts which, if accepted,
render it plausible that Iceotope could overcome the legal presumption that the six
Inventors were properly named on the LiquidCool Patents.

Iceotope's complaint is silent as to any such facts.  Iceotope simply threw into its
complaint a conclusory phrase that the inventions claimed by the LiquidCool Patents

were invented by Iceotope, "not by LCS." Dkt. 1, ¶ 32. Facts to render this assertion plausible are absent.

Though Iceotope never alleges it, its assertions regarding LiquidCool's awareness of published documents seem intended to imply that the Inventors derived their inventions from the Iceotope Documents. The AIA, however, created special procedures, including bringing an action in the district court, for parties claiming derivation. *See* 35 U.S.C. §§ 135 & 291. Iceotope has not pled a derivation claim and has not sought to meet the standard for asserting one. The timeline demonstrates that all of the Iceotope Documents were published after LiquidCool filed its provisional application and four published after LiquidCool filed its last application. The allegations of awareness of the four latter publications at an unspecified time cannot plausibly negate the presumption that the Inventors conceived of their inventions. As to the two Iceotope Documents that published shortly before LiquidCool's non-provisional applications were filed, section IV.A., *supra* at 12-13, explains they are at most prior art and do not plausibly negate that presumption. Further, as discussed in the preceding section, Iceotope did not demonstrate the relationship between the claims of the LiquidCool Patents and the Iceotope Documents. That alone renders Iceotope's claim conclusory and insufficient to satisfy the plausibility standard. *See, e.g., Eastman*, 2019 WL 1559015, at *3–4; *DeSouza*, 2011 WL 4808532, at *1.

Of course, for the Iceotope Employees to properly claim entitlement to the LiquidCool Patents under § 101, Iceotope must also allege facts sufficient to render

plausible that the Iceotope Employees actually conceived of and reduced to practice the inventions claimed by the LiquidCool Patents. For the reasons stated in the preceding sections, Iceotope has not alleged facts sufficient to plausibly claim this.

Even if Iceotope alleged facts rendering plausible 1) that the Iceotope Employees actually invented the inventions claimed by the LiquidCool Patents, and 2) that all the Inventors were misjoined—which it has not—it must allege more to take sole ownership of the LiquidCool Patents. The claim of nonjoinder still requires Iceotope must allege facts regarding collaboration or some relationship sufficient to justify treating the Iceotope Employees as the same inventive entity as the applicant that sought the LiquidCool Patents. Otherwise Iceotope could use § 256 to hijack a patent with which it had no connection covering inventions on which it never sought a patent.

*Rubin* is instructive here. In *Rubin*, Drs. Rubin and Anderson filed suit to correct inventorship of two patents assigned to The General Hospital Corporation ("GHC"), an entity with which Drs. Rubin and Anderson were not affiliated. *Rubin*, 2011 WL 1625024 at *1. Two GHC employees (the "GHC Inventors") are listed as the named inventors on those patents. *Id.* at 2. Before the GHC Inventors filed the applications that resulted in the patents at-issue, they received a copy of an article written by Drs. Rubin and Anderson, which described the same technology for which the GHC employees would subsequently seek patent protection. *Id.* at 2-3. One of the GHC Inventors reviewed an abstract of the article, which was at that time publicly unavailable, but the parties never spoke or collaborated in any way. *Id.* at 3. As noted *supra* at 11, *Rubin*

held that independent review of this document did not evidence collaboration or joint activity.

The *Rubin* opinion carefully analyzes the case law applicable to claims seeking to correct inventorship under § 256 where complete substitution of inventors was sought, and held that the collaboration requirement applies even where the plaintiff seeks a complete substitution of inventors. *Id*. at 10-12. The court concluded:

> [S]ection 256 is not intended to resolve disputes concerning priority of invention but is intended to encourage collaboration between and among inventors and correct the named inventors without the need to invalidate the patent. . .); *see Pannu* [*v. Iolab Corp.*], 155 F.3d [1344,] at 1349–50 [(Fed. Cir. 1998)]; Stark [*v. Advanced Magnetics, Inc.*], 119 F.3d [1551] at 1554 [(Fed. Cir. 1997)].

*Id*. at 10.  Having found the facts did not support a finding of collaboration or joint activity, the court held that § 256 did not provide a basis for allowing substitution of inventors where the substitute inventors had no relationship or connection to the original applicants or owner by assignment.

As shown in section IV.A., Iceotope never alleged (nor can it), that it collaborated with LiquidCool on the inventions for which these applications were filed.  Iceotope cannot obtain a patent without ever filing for one or collaborating with the entity that did. The publication of documents alone is not collaboration and cannot form the basis for a correction of inventorship claim.  *Rubin,* 2011 WL 1625024, at *7-8, 10.

## V.   CONCLUSION

Iceotope has not alleged any facts that would make its correction of inventorship claims plausible.  The issued LiquidCool Patents carry with them a presumption that the

20

Inventors named are correct, a presumption that can only be overcome by clear and convincing evidence. LiquidCool and this Court should not be burdened with the time and expense of discovery when no plausible claim has even been alleged.

For the foregoing reasons, pursuant to Fed. R. Civ. Pro. 12(b)(6), LiquidCool respectfully requests that the Court dismiss Iceotope's complaint for failure to state a claim.  Because there was no collaboration between the parties, and Iceotope cannot allege any facts evidencing any such collaboration, LiquidCool also requests that the dismissal be made with prejudice.

Respectfully submitted,

Dated:  April 5, 2021

s/ David L. De Buin
David L. De Bruin (#6294648 IL)
(*Admitted pro hac vice*)
ddebruin@honigman.com
Ron N. Sklar (#6304022 IL)
(*Admitted pro hac vice*)
rsklar@honigman.com
HONIGMAN LLP
155 North Wacker Drive, Suite 3100
Chicago, IL  60606
Telephone:  (312) 701-9322
Facsimile:  (312) 701-9335

and

Arthur G. Boylan (#338229)
aboylan@anthonyostlund.com
ANTHONY OSTLUND BAER &
LOUWAGIE P.A.
3600 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone:  (612) 349-6969
Facsimile:  (612) 349-6996

*Attorneys for Defendant LiquidCool
Solutions, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby state that I caused a copy of the attached **Defendant's Memorandum In Support of Its Rule 12 Motion to Dismiss** to be filed electronically with the Clerk of the Court using the CM/ECF system on April 5, 2021, which will automatically forward notice to all counsel of record.

*/s/ David L. De Bruin*
*Attorney for Defendant LiquidCool*
*Solutions, Inc.*